FILED

MAY 12 2021

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:21CR310 SEP/NAB |
| v. ) | |
| ) | |
| BRAD STEPHENS, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNTS 1-3
### MAIL FRAUD

**A.**   **Introduction and Background**

At all times relevant to the Indictment:

1.     The defendant **BRAD STEPHENS** (hereinafter referred to as "**STEPHENS**") was employed as a police officer by the St. Louis Metropolitan Police Department (hereinafter referred to as "SLMPD") in St. Louis, Missouri, and had been employed by the SLMPD since October 6, 2014.

2.     The Tower Grove South Concerned Citizen Special Business District (hereinafter referred to as "TGSCC-SBD") was formed in approximately 2009 within the Tower Grove South Neighborhood in St. Louis, Missouri. TGSCC-SBD was established to provide special police and/or security facilities, equipment, vehicles and/or personnel for the protection and enjoyment of the property owners and the general public within the district. The administration

and operations of TGSCC-SBD were taxpayer funded. During approximately 2010, TGSCC-SBD contracted with City Wide Security (hereinafter referred to as "CWS") to provide additional private security patrols within the Tower Grove South Neighborhood.

3. CWS is a private company that contracts with businesses and organizations to provide private security patrols. CWS employs off-duty uniformed SLMPD police officers to conduct the security patrols. The defendant, **STEPHENS**, was employed by CWS beginning in approximately 2015 to work during some of his off-duty hours to patrol the Tower Grove South Neighborhood under CWS's contract with TGSCC-SBD. CWS provided its off-duty SLMPD police officer employees, including **STEPHENS**, a vehicle to be used to patrol the neighborhood that was equipped with a GPS system to track the vehicle's operation. The CWS employees were also supplied with a daily logbook within which they were to log patrols and report any activity that occurred during their shifts. These patrol logs were provided by CWS to TGSCC-SBD monthly. While **STEPHENS** was employed by CWS, he and the other CWS employees would send the CWS administrator via email each month the days and shifts they agreed to work the security patrol for TGSCC-SBD. Relying upon those representations by **STEPHENS** and the other CWS employees, the CWS administrator would then put together a monthly calendar listing each CWS employee's assigned patrol days and shifts and distribute those monthly calendars to **STEPHENS** and the other CWS employees. **STEPHENS** was terminated by CWS on or about August 18, 2019.

**B.** **Scheme To Defraud**

4. Beginning on or about January 1, 2018 and continuing through on or about August 19, 2019, both dates being approximate and inclusive, in the Eastern District of Missouri, the defendant,

2

**BRAD STEPHENS,**

devised, intended to devise, and knowingly participated in a scheme to defraud and to obtain money from City Wide Security and the Tower Grove South Concerned Citizen Special Business District by means of materially false and fraudulent pretenses, representations, and promises.

5. It was a part of the scheme that, on one and more occasions, **STEPHENS** falsely represented to CWS certain days and shifts he agreed to work as part of the CWS security patrol in the Tower Grove South Neighborhood when, in fact, and unbeknownst to CWS, **STEPHENS** did not actually work those assigned days and shifts. Based upon his false representations, **STEPHENS** was paid $25 - $30 per hour by CWS for the days and shifts he did not actually work, with funds CWS received under its contract with TGSCC-SBD.

6. On the days and shifts **STEPHENS** did not work his assigned security patrol in the Tower Grove South Neighborhood, no other CWS employee covered those days and shifts and, therefore, the Tower Grove South Neighborhood was not provided with the private security patrols it contracted for through TGSCC-SBD. TGSCC-SBD paid CWS for those unattended security patrols with taxpayer derived funds, falsely believing that **STEPHENS** had performed those assigned security patrols.

7. As a further part of the scheme, during 2018, **STEPHENS** falsely represented that he worked on the CWS security patrol in the Tower Grove South Neighborhood on approximately 93 days. Based upon his false representations, **STEPHENS** was paid approximately $14,250 by CWS for work he did not actually perform for TGSCC-SBD during 2018. TGSCC-SBD unwittingly paid CWS approximately $29,000 of taxpayer funds for hours **STEPHENS** did not actually work.

3

8.  As a further part of the scheme, during 2019, **STEPHENS** falsely represented that he worked on the CWS security patrol in the Tower Grove South Neighborhood on approximately 76 days. Based upon his false representations, **STEPHENS** was paid approximately $10,500 by CWS for work he did not actually perform for TGSCC-SBD during 2019. TGSCC-SBD unwittingly paid CWS approximately $21,000 of taxpayer funds for hours **STEPHENS** did not actually work.

C.  **The Mailings**

**Count 1**

9.  On or about August 9, 2019, within the Eastern District of Missouri, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant,

**BRAD STEPHENS,**

knowingly caused City Wide Security to mail a check to his home address in St. Louis, Missouri in the amount of $648.00, which funds represented wages **STEPHENS** purportedly earned based upon his false representations that he had worked certain days and shifts on the Tower Grove South Neighborhood security patrol when, as he well knew, he had not in fact worked those days and shifts.

All in violation of Title 18, United States Code, Section 1341.

**Count 2**

10.  On or about July 12, 2019, within the Eastern District of Missouri, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant,

**BRAD STEPHENS,**

knowingly caused City Wide Security to mail a check to his home address in St. Louis, Missouri in the amount of $648.00, which funds represented wages **STEPHENS** purportedly earned based upon his false representations that he had worked certain days and shifts on the Tower Grove South Neighborhood security patrol when, as he well knew, he had not in fact worked those days and shifts.

All in violation of Title 18, United States Code, Section 1341.

**Count 3**

11.     On or about June 28, 2019, within the Eastern District of Missouri, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant,

**BRAD STEPHENS,**

knowingly caused City Wide Security to mail a check to his home address in St. Louis, Missouri in the amount of $1,032.00, which funds represented wages **STEPHENS** purportedly earned based upon his false representations that he had worked certain days and shifts on the Tower Grove South Neighborhood security patrol when, as he well knew, he had not in fact worked those days and shifts.

All in violation of Title 18, United States Code, Section 1341.

**FORFEITURE ALLEGATION**

The Grand Jury further alleges there is probable cause that:

1.     Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1341 as set forth in Counts One, Two, and Three, the defendant shall forfeit to the

United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $50,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
HAL GOLDSMITH, 32984MO
Assistant United States Attorney

6